FILED
2022 JAN 19 AM 8:41
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MIA SALAS,<br><br>                    Plaintiff,<br><br> v.<br><br>UNIVERSITY OF UTAH MADSEN HEALTH CENTER and MATTHEW WELCH,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNIVERSITY OF UTAH MADSEN HEALTH CENTER'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:21-cv-00437-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

This case arises from alleged employment discrimination by Matthew Welch ("Welch") while employed by the University of Utah[1] ("the University") (collectively, "Defendants"). Before the court is the University's motion for partial judgment on the pleadings. For the following reasons, the court GRANTS IN PART and DENIES IN PART the University's motion.

## FACTUAL BACKGROUND

Plaintiff Mia Salas ("Salas") is a Latina woman formerly employed by a lab at the University of Utah's Madsen Health Center. Salas experiences depression and anxiety, which causes her to occasionally take extended breaks or time off from work.

While at the University, Salas worked on the same team as Welch. Welch ranked higher than Salas on the team. Salas alleges that Welch regularly sexually harassed her at work.

---

[1] According to the University of Utah, the Madsen Health Center is a unit of the University of Utah. Therefore, the University of Utah is the proper Defendant.

Specifically, Salas alleges that Welch engaged in verbal harassment by asking her about sexual behaviors between Salas and her romantic partner, making sexual comments about Salas's appearance or dress, and making comments implying a desire for sexual behaviors between himself and Salas. Further, Salas alleges that Welch engaged in physical harassment. Salas contends that Welch touched her in unwanted manners, including rubbing her shoulders and back and giving her unwanted hugs. Salas further alleges that, at least once, Welch stood behind Salas while she was seated in a chair and rubbed his aroused genitalia on her.

Salas complained about Welch's behavior to her supervisors. Salas contends that within days of her complaints, she began to receive warnings about her behavior at work, including allegations of excessive tardiness or absences. Salas claims that other employees with similar attendance records did not receive discipline. In particular, Salas claims that employees in her lab—including Welch—missed work without suffering employment consequences.

On October 9, 2019, the University terminated Salas. Salas continued to press her complaints, including complaints to the Utah Antidiscrimination and Labor Division and the Equal Employment Opportunity Commission. Salas received a right to sue letter on January 13, 2021. The University eventually investigated and subsequently terminated Welch.

Salas filed suit in state court on April 8, 2021. Defendants subsequently removed the case to federal court. Salas brings eight claims. Although Salas does not name the specific party to whom each count is directed, reading the allegations makes the intended party clear for most of the claims. Counts I (assault and battery) and II (intentional infliction of emotional distress) allege state-law tort claims against Welch. Counts III (respondeat superior) and IV (negligence) allege state-law tort claims against the University. Counts V (hostile work environment), VI (wrongful termination), and VII (retaliation) allege claims against both Defendants under Title

VII and the Utah Anti-Discrimination Act. Finally, count VIII (punitive damages) requests an award of punitive damages. Count VIII variously references "Defendants'" and "Defendant's," so the court is unable to discern whether Salas intended to direct the punitive damages count at one or both Defendants.

On August 6, 2021, the University, acting independently, brought this motion for judgment on the pleadings.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Courts apply the standard for motions to dismiss under Rule 12(b)(6) to motions for judgment on the pleadings under Rule 12(c). *See Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011).

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

The court divides the University's arguments by count. First, the University seeks dismissal of counts I-IV because the Utah Governmental Immunity Act ("UGIA") bars state-law tort claims. Second, the University seeks dismissal of the disability aspect of counts V-VII because Title VII does not cover claims based on disability, and the Utah Anti-Discrimination

Act ("UADA") does not provide a private right of action for plaintiffs. Third, the University seeks dismissal of count VIII because the UGIA prevents awards of punitive damages. The court addresses each argument in turn.

## I.   STATE-LAW TORT CLAIMS AGAINST THE UNIVERSITY

The University argues that the UGIA bars the state-law claims in counts I-IV.[2] The UGIA is a "single, comprehensive chapter govern[ing] all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties." *Peak Alarm Co., Inc. v. Werner*, 297 P.3d 592, 597 (Utah 2013) (quoting UTAH CODE § 63G-7-101(2)(b)). The UGIA states that "[e]xcept as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." UTAH CODE § 63G-7-201(1).

---

[2] The court notes that the UGIA contains a jurisdictional provision that appears to bar jurisdiction in federal court over state-law claims resulting from waived governmental immunity. The jurisdictional provision states that "[t]he district courts have exclusive, original jurisdiction over any action brought under this chapter." UTAH CODE § 63G-7-501(1). This court has previously certified two related questions to the Utah Supreme Court: (1) whether Utah Code §§ 63G-7-501 and -502 reflect an intent by the State of Utah to limit the UGIA's waiver of sovereign immunity to suits in Utah district courts and (2) whether the Office of the Attorney General for the State of Utah ("Utah Attorney General") has the authority to waive the jurisdictional and venue provisions enacted by the Utah legislature in the UGIA. *See GeoMetWatch Corp. v. Hall*, No. 1:14-cv-60, 2019 WL 430886, at *2 (D. Utah Feb. 4, 2019). The Utah Supreme Court declined to directly answer those questions. *See GeoMetWatch Corp. v. Utah State Univ. Rsch. Found.*, 428 P.3d 1064, 1069 (Utah 2018).

Because the Utah Attorney General removed this case to federal court, this case has the potential to raise the same unanswered questions. However, because the court dismisses each of the state-law claims as to the University, the court need not reach the aforementioned questions here. But these jurisdictional questions have arisen before, and the court expects them to arise again. The court notes that the Utah Supreme Court has the privilege and responsibility to interpret Utah law. The decision by the Utah Attorney General to override the jurisdictional provision in the UGIA by removing this case to federal court raises serious separation of powers issues that this court believes must be addressed by the proper body to adjudicate questions of Utah law—the Utah Supreme Court.

The court proceeds by addressing the claims in counts I and II together, then turning to the claims in counts III and IV.

### A.    Counts I and II

The University's arguments as to counts I and II are moot. Counts I (assault and battery) and II (intentional infliction of emotional distress) allege state law tort claims against Welch. *See* ECF No. 2-3 ¶ 33 ("Defendant Welch assaulted and battered Plaintiff."); *id.* ¶ 41 ("Defendant Welch's conduct described herein caused Plaintiff to suffer severe emotional distress."). Because counts I and II do not make any allegations against the University, the court DENIES AS MOOT the University's motion to dismiss counts I and II.

### B.    Counts III and IV

Counts III and IV allege causes of action against the University. Count III alleges that the University is jointly and severally liable for assault and battery and intentional infliction of emotional distress by Welch under the theory of respondeat superior. Count IV alleges that the University acted negligently when it failed to prohibit harassing behavior by Welch, and when it failed to respond to Salas and other employees' complaints about Welch's harassing behavior.

Utah courts apply a three-part test to determine whether a governmental entity is immune from suit under the UGIA: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Peck v. State*, 191 P.3d 4, 7 (Utah 2008).

Under the first prong, the court asks whether the particular activity in question constitutes a governmental function. "Governmental function" is defined broadly as "each activity, undertaking, or operation of a governmental entity" or of "a department, agency, employee, agent, or officer of a governmental entity," as well as "a governmental entity's failure to act."

UTAH CODE § 63G-7-102(5)(a)-(c). Salas concedes that the University was a governmental entity engaged in a governmental function. *See* ECF No. 13, at 3 ("Plaintiff does not dispute that the University was engaged in a 'governmental function.'"). However, the analysis as to counts III and IV diverges with regard to the second prong, express waiver. The court addresses each count accordingly.

### i.      Count III

The UGIA does not expressly waive immunity for intentional tort causes of action. *See Miller v. Utah*, 638 F. App'x 707, 715 (10th Cir. 2016) (unpublished) ("There are no provisions in the [UGIA] waiving immunity for intentional torts . . . ."). And the Utah Supreme Court has held that "immunity is retained under the [UGIA] if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent." *Sanders v. Leavitt*, 37 P.3d 1052, 1058 (Utah 2001) (citations omitted). Indeed, Salas provides no argument as to why her respondeat superior claim grounded in the two intentional tort claims should survive. Accordingly, in the absence of any legislative waiver of immunity for intentional torts, the court DISMISSES as barred by the UGIA Salas's claim for respondeat superior liability as to Welch's alleged assault and battery and intentional infliction of emotional distress (count III).

### j.      Count IV

In contrast, the UGIA expressly waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." UTAH CODE § 63G-7-301(2)(i). However, Utah Code § 63G-7-201(4) provides a series of exceptions to the general negligence immunity waiver. The exceptions include where

"the injury arises out of or in connection with, or results from: assault, battery . . . or violation of civil rights." UTAH CODE § 63G-7-201(4)(b).

As Salas concedes, the University's actions in failing to proactively prevent Welch from sexually assaulting Salas are immune from suit under the UGIA. The injury resulting from any negligence on the part of the University in failing to prohibit Welch's behavior is Welch's sexual assault or battery. But the Utah legislature retained immunity where the underlying injury results from assault or battery. *See* § 63G-7-201(4)(b). Therefore, because the University's failure to prohibit Welch's behavior allegedly led to an assault, an exception to the general negligence waiver applies and the University retains immunity.

The University argues that the analysis should end there. But Salas counters that her negligence claim encompasses two sets of underlying facts: (1) that the University acted negligently in failing to prohibit Welch's behavior *and* (2) that the University acted negligently in failing to take timely action after receiving complaints about Welch's behavior from Salas and other employees. Salas argues that, while the first set of underlying facts may result in immunity for the University, the second set of facts constitutes a unique set of negligent acts that arise from different "conduct or situation" and created a different injury. Thus, Salas argues, the second set of underlying facts is not subject to waiver and Plaintiff's negligence claim should remain.

The UGIA "focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff." *Ledfors v. Emery Cnty. Sch. Dist.*, 849 P.2d 1162, 1166 (Utah 1993). But, here, Salas's allegations do not specify what injury resulted from the University failing to take timely action after receiving complaints about Welch, beyond a cursory statement that "Plaintiff has sustained economic and emotional injuries." ECF No. 2-3 ¶ 57. Salas provides no indication that the University's alleged negligence caused injuries unrelated to

Welch's offensive conduct. Indeed, Salas's complaint indicates that each of the two sets of underlying facts listed above resulted in the same economic and emotional injuries. Therefore, even reading the allegations in the complaint in the light most favorable to Salas, the complaint appears to allege that the injury that resulted from the fact that the University continued to disregard Salas's complaints was the same injury that resulted from the University failing to prohibit Welch's behavior—further injuries stemming from assaults by Welch. As discussed above, where the injury arises out of or in connection with assault, the Utah legislature has not waived immunity for governmental entities. *See* UTAH CODE 63G-7-201(4)(b).

And, indeed, even were Salas to attempt to fashion an injury that arose solely out of the University's refusal to act on Salas's complaints, the Utah Supreme Court has "consistently rejected claims that have reflected attempts to evade these statutory categories by recharacterizing the supposed cause of the injury." *Van de Grift v. State*, 299 P.3d 1043, 1049 (Utah 2013) (citation omitted).

Accordingly, the court DISMISSES Salas's negligence claim against the University (count IV).

## II.   HOSTILE WORK ENVIRONMENT, DISCRIMINATION, AND RETALIATION CLAIMS

### A.   *Title VII*

Salas's fifth, sixth, and seventh causes of action allege claims for hostile work environment, wrongful termination, and retaliation based on Plaintiff's race, ethnicity, gender, national origin, and disability. The University argues that, to the extent these claims are based on her disability, the court should dismiss them because Title VII does not cover disability-based claims. Plaintiff's counsel counters that the inclusion of disability discrimination under Title VII represents a drafting error.

As Plaintiff's counsel correctly notes, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, creates a private right of action for disability discrimination. Conversely, Title VII creates a cause of action for discrimination based on an individual's "race, color, religion, sex, or national origin." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 457 (1975). Title VII does not support claims for disability discrimination. *See* 42 U.S.C. § 2000e-2.

But Salas is not without recourse. It is well-established that a plaintiff is not required to include legal theories or expressly invoke a particular statute in her complaint. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curium) (holding that the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("[P]laintiffs in federal courts are not required to plead legal theories. Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." (citation omitted)); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219 (4th ed. 2021) ("The federal rules effectively abolished the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.").

And it is obvious from a review of the complaint that the citation to Title VII in reference to disability discrimination was an error. Accordingly, the court construes the complaint as raising a claim under the Americans with Disabilities Act. The complaint's facts and its mention of disability discrimination give sufficient notice to the University of the Plaintiff's intent to proceed on a theory of disability discrimination. Therefore, Salas may pursue this theory at summary judgment and trial.

When a plaintiff fails to cite the relevant statute, the court may, "[f]or clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings' . . . accord [plaintiff] an opportunity to add to their complaint a citation to [the relevant statute]." *See Johnson*, 574 U.S. at 12; *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."). Accordingly, the court grants Salas twenty-one days from the date of this order to amend her complaint to include a citation to the proper provision of the Americans with Disabilities Act.[3]

### B.    Utah Anti-Discrimination Act

The University further argues that the Utah Anti-Discrimination Act ("UADA") does not grant Plaintiff a private right of action. Salas counters that the administrative remedies provided for by the UADA ultimately allow a plaintiff to seek a Notice of Right to Sue, which then allows a plaintiff to pursue her action in court.

The University is correct, and Salas concedes, that the UADA itself does not create a private right of action. *See Giddings v. Utah Transit Auth.*, 107 F. Supp. 3d 1205, 1209 (D. Utah 2015) ("The Utah Supreme Court has held that an individual does not have a private right of action for violations of the UADA."). But Salas need not rely on the UADA because Title VII and the ADA provide private rights of action for her workplace discrimination claims. Again, an "imperfect statement of the legal theory supporting the claim asserted" does not provide a basis for dismissal. *Johnson*, 574 U.S. at 11. Therefore, to the extent the University seeks dismissal on the grounds that Salas has cited an improper legal theory, the court DENIES that motion.

---

[3] Indeed, at oral argument, counsel for the Utah Attorney General's Office stated that he had no objection to Plaintiff amending her complaint to list the appropriate statutory provision.

### III.    PUNITIVE DAMAGES

As noted above, it is unclear whether Salas intended to bring a claim for punitive damages against one or both defendants. Salas cites to both "Defendants'" and "Defendant's" under count VIII. To the extent that Salas seeks punitive damages against the University for any state law claims, the University argues that Utah Code § 63G-7-603 precludes an award of punitive damages against a government entity. Salas does not dispute that the UGIA prohibits damages against the University, but rather argues that the claim should be permitted to continue against Welch.

The court agrees that Utah Code § 63G-7-603 prevents an award of punitive damages against the University. *See* UTAH CODE § 63G-7-603(1)(a) ("A judgment may not be rendered against a governmental entity for exemplary or punitive damages."). Accordingly, the court DISMISSES Salas's claim for punitive damages claim (count VIII) as to the University.

### CONCLUSION

In sum, the court DISMISSES counts III, IV, and VIII against the University. The court DENIES the University's motion for judgment on the pleadings as to counts I, II, V, VI, and VII. Accordingly, counts I, II, V, VI, VII, and VIII remain against Welch and counts V, VI, and VII remain against the University, subject to an amendment stating the correct statutory provisions. The court GRANTS Salas twenty-one days from the date of this order to amend her complaint with regard to her disability discrimination claim.

DATED January 19, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge